UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DION H. R. SPARKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:14-cv-01519-SEB-MJD |
| ) | |
| CAROLYN W. COLVIN Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Dion Sparks ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), & 1382c(a)(3). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED.**

## Procedural History and Background

Plaintiff filed the current applications for DIB and SSI on February 28, 2012, alleging an onset of disability on November 2, 2008. [R. at 11.] He was 34 years old at the time of the alleged onset, and he had past work experience as a fast food cook, cook helper, kitchen helper, and metal sorter. [R. at 24-25.] He alleged disability due to depression; anxiety; leg and back problems; and an Achilles tendon tear. [R. at 16.][1]

---

[1] Plaintiff recited the relevant factual and medical background in more detail in his opening brief. [*See* Dkt. 17.] The Commissioner, unless otherwise noted herein, does not dispute these facts. [*See* Dkt. 18.] Because these facts involve Plaintiff's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs and will articulate only specific facts as needed herein.

1

Plaintiff's applications were denied initially on June 21, 2012 and on reconsideration on September 17, 2012. [R. at 11.] Plaintiff requested a hearing, which occurred via videoconference before Administrative Law Judge ("ALJ") Rosanne Dummer on May 9, 2013. [*Id.*] Plaintiff appeared and testified at the hearing, as did Plaintiff's case manager from Meridian Health Services, Dia Hogg. [*Id.*] Vocational expert Deborah Bunn-Durham and attorney Patrick Mulvany were also present. [*Id.*] The ALJ determined that Plaintiff had not been under a disability at any time from the alleged date of onset through the date of the ALJ's May 28, 2013 decision. [R. at 26.] The Appeals Council denied Plaintiff's request for review on July 18, 2014, [R. at 1-6], rendering the ALJ's decision final. Plaintiff filed his complaint in this Court on September 17, 2014. [Dkt. 1.]

## **Applicable Standard**

To be eligible for SSI or DIB, a claimant must have a disability under 42 U.S.C. § 423.[2] Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

2

not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* This court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). To be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while she "is not required to address every piece of evidence or testimony," she must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1176. . The Court, that is, "must be able to trace the ALJ's path of reasoning" from the

evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000), *as amended* (Dec. 13, 2000).

**The ALJ's Decision**

The ALJ first noted that Plaintiff had filed SSI and/or DIB applications, in September 2007, March 2009, and June 2011, all of which had been denied. [R. at 11.] The final denial occurred on September 6, 2011. [R. at 12.] Because Plaintiff's alleged onset date of November 2, 2008 pre-dated the final denial of Plaintiff's previous applications, the ALJ construed the current application as an implicit request to reopen Plaintiff's prior applications. [*Id.* (citing 20 C.F.R. § 404.987(b), 416.1487(b)).] The ALJ found no basis to reopen the applications,[3] and she accordingly concluded that the prior denials were binding through September 6, 2011.

Turning to the current applications, the ALJ determined that Plaintiff met the insured status requirements of the Act through March 31, 2016. [R. at 14.] She then applied the five-step sequential evaluation process. At step one, she found that Plaintiff had not engaged in substantial gainful activity ("SGA") since November 2, 2008, the alleged onset date. [*Id.*] At step two, she found that Plaintiff suffered from the severe impairments of "major depressive disorder," "panic disorder without agoraphobia, and "status post July 2012 left tendon repair." [*Id.*] She also noted that Plaintiff complained of back pain and arthritis, but she found that these impairments were not severe. [*Id.*]

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [*Id.*] She evaluated Plaintiff's musculoskeletal impairments under Listing 1.02 (Major Dysfunction of a Joint), but found that the medical evidence did not support all criteria of that listing. [R. at 15.] She then considered

---

[3] Plaintiff has not challenged this finding. [*See* Dkt. 17.]

4

Plaintiff's mental impairments under Listings 12.04 and 12.06. [*Id.*] In doing so, she employed the SSA's special technique for evaluation of mental impairments. She thus considered the "Paragraph B" criteria and found that Plaintiff had "mild" restrictions in activities of daily living; "moderate" difficulties in social functioning; and "moderate" difficulties maintaining concentration, persistence, or pace. [*Id.*] She also found that Plaintiff had no episodes of decompensation of extended duration, [*id.*], and she concluded that the Paragraph B criteria were not satisfied. [*Id.*] The ALJ then turned to the "Paragraph C" criteria, but she found that the record contained insufficient evidence to establish that these criteria were satisfied. [*Id.*]

The ALJ next analyzed Plaintiff's residual functional capacity ("RFC"). She concluded that Plaintiff had the RFC to:

> lift/carry about twenty pounds occasionally and ten pounds frequently; sit at least six of eight hours, and possibly up to eight of eight hours; and stand/walk for two of eight hours using a brace. He should never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to wetness and hazards of work such as dangerous moving machinery and unprotected heights, and slippery uneven surfaces (Exhibits 10F, 15F). Secondary to mental limitations, the claimant is able to understand, remember, and carry out simple tasks. He is able to sustain attention for simple tasks for extended periods of two-hour segments in an eight-hour day. He is able to maintain on a superficial basis and on an ongoing basis contact with coworkers and supervisors. He can attend to tasks for sufficient periods of time to complete them. He is able to manage stresses involved with simple work (Exhibit 7F).

[*Id.*] At step four, the ALJ concluded that this RFC did not allow Plaintiff to perform any of his past relevant work. [R. at 24.] The ALJ thus proceeded to step five, at which time she received testimony from the vocational expert indicating that someone with Plaintiff's education, work experience, age, and RFC would be able to perform jobs such compact assembler, dowel inspector, hand packager, glass frame polisher, and cuff

folder. [R. at 25.] Because these jobs existed in significant numbers in the national economy, the ALJ concluded that Plaintiff was not disabled. [R. at 25-26.]

## Discussion

Plaintiff presents three arguments for review. He first asserts that the ALJ should have concluded that Plaintiff was disabled because of his anxiety and depression. [Dkt. 17 at 11.] He then contends that the ALJ's decision must be reversed because the ALJ did not summon a medical advisor to provide a new opinion on whether Plaintiff's impairments met or medically equaled Listings 12.04 or 12.06. [*Id.* at 15.] Finally, Plaintiff attacks the ALJ's step five determination on the grounds that the ALJ's underlying RFC did not account for Plaintiff's mental limitations. [*Id.* at 18.]

**1. Effect of Anxiety and Depression**

Plaintiff contends that the ALJ did not place enough weight on the allegedly disabling effects of Plaintiff's anxiety and depression. [Dkt. 17 at 11-14.] He specifically contends that the ALJ 1) erroneously discounted Plaintiff's impairments because Plaintiff did not consistently seek treatment, and 2) improperly ignored certain Global Assessment of Functioning ("GAF") scores.

**a. Lack of Consistent Treatment**

During the time period relevant to Plaintiff's current application for benefits, Plaintiff received mental health treatment from Meridian Health Services. [*See, e.g.*, R. at 709-820.] The ALJ observed that, throughout this period, Plaintiff showed little commitment to attending his recommended treatment sessions. [R. at 19-20.] In particular, Plaintiff's case manager repeatedly noted that "[Plaintiff] is not being consistent regarding his treatment and scheduled [appointments.]" [R. at 795; *see also id.* ("Client was beginning to make some minimal progress towards [treatment] plan goals, but due to his lack of participation in consistent services, [client]

6

is no longer making progress[.]"); R. at 777 ("[H]e has not been engaging in consistent services."); R. at 786 (same); R. at 792 (same).] The ALJ also noted that Plaintiff's treatment showed no increase in the frequency of therapy sessions and no changes in medication. [R. at 21.] Based in part on this lack of treatment, the ALJ concluded that Plaintiff's mental limitations were not as severe as Plaintiff alleged, [*see* R. at 20-21], and Plaintiff now claims that the ALJ erred in doing so.

Social Security Ruling 96-7p sets out the rules governing an ALJ's consideration of a claimant's lack of treatment. That Ruling provides:

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7p. Plaintiff contends that the ALJ ignored the latter half of this rule by failing to "consider[] any explanations" that Plaintiff might have provided to account for his lack of consistent treatment at Meridian Health Services. [Dkt. 17 at 12-13.]

The record does not support Plaintiff's contention. At the hearing, the ALJ specifically asked Plaintiff about his inconsistent treatment. [R. at 47 ("Seems like they're mentioning there's some problems with attendance. What's that about?").] Plaintiff responded that he "[had] no idea," and said that he "[tried] to get there" when he could. [*Id.*] Plaintiff also suggested that he had trouble arranging for transportation to his appointments, [*id.*], but the ALJ later asked Plaintiff's case manager—Dia Hogg—why Plaintiff had trouble keeping his appointments. [R. at 57.] Mr. Hogg did not mention

7

transportation difficulties; instead, he speculated that Plaintiff had "emotional and mental problems" that might have interfered with his attendance. [*Id.*] Mr. Hogg did not elaborate on this speculation, [*see id.*], and the ALJ later noted that no evidence in the record corroborated this statement. [R. at 21 ("No evidence indicates that the claimant's mental impairments prevent treatment.").]

The ALJ also addressed Plaintiff's ability to pay for treatment. [R. at 21 ("The undersigned has carefully considered his impairments and testimony regarding lack of funds[.]").] She noted that Plaintiff had been on Medicaid, but that he lost Medicaid benefits because he did not consistently attend his recommended medical appointments. [R. at 20; *see also* R. at 795 ("[Client] is not being consistent regarding his treatment and scheduled [appointments], thus [client] has lost [M]edicaid, and other services[.]").] Hence, it was not lack of funds that caused Plaintiff to miss appointments; rather it was the opposite: Plaintiff's own inattentiveness to his treatment *caused* him to lose funding for that treatment, such that lack of funding could not have been a basis for Plaintiff's inconsistent treatment history.

Based on the foregoing, the ALJ complied with the requirements of SSR 96-7p. She specifically considered Plaintiff's explanations for his lack of treatment, and she concluded that these explanations could not have accounted for the entirety of Plaintiff's failures to seek treatment or to follow his treatment regimen. As such, she was justified in determining that Plaintiff's treatment history indicated that his mental impairments were not as severe as he alleged. *See* SSR 96-7p; *accord, e.g.*, *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) ("In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding where the claimant does not

8

have a good reason for the failure or infrequency of treatment."). The ALJ therefore did not err, and the Court has no basis to remand the ALJ's decision for further consideration of Plaintiff's inconsistent treatment.

   b. **GAF Scores of 49**

As part of Plaintiff's treatment at Meridian Health Services, Plaintiff's healthcare providers assigned numerous GAF scores. The GAF scale ranges from 0 to 100 and reflects a patient's level of function or severity of symptoms on a particular day. *See, e.g.*, *Anderson v. Astrue*, No. 3:11-CV-153 CAN, 2012 WL 1200934, at *1 n.1 (N.D. Ind. Apr. 10, 2012). Higher scores indicate less severe symptoms or a higher level of functioning; lower scores indicate the opposite. *Id.*[4] In this case, Plaintiff received a GAF score of 49 at evaluations conducted on August 23, 2012 [R. at 715]; on October 30, 2012 [R. at 745]; on November 12, 2012 [R. at 763]; on November 26, 2012 [R. at 774]; on February 11, 2013 [R. at 800]; and on February 18, 2013. [R. at 804.] Such a score indicates "serious" symptoms or "serious" impairments in social or occupational functioning, [*see* Dkt. 17 at 5 n.1], and Plaintiff concludes that these scores "prove[]" that he was "totally disabled." [*Id.* at 11.]

Plaintiff misunderstands the purpose and significance of GAF scores. Physicians assign these scores because they are "useful for planning treatment;" they do not assign them to evaluate whether a patient is disabled for the purpose of benefit awards. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In addition, the GAF scale is used to measure both a patient's symptoms and the functional effects of those symptoms. *Id.* The final assigned score, however, always represents the worse of the two ratings. *Id.* Thus, a patient's low GAF score may be indicative only of the patient's symptoms, without any indication of whether those symptoms

---

[4]The American Psychiatric Association recently discontinued use of GAF scores, but the metric was still in use at the time of Plaintiff's evaluations. *See Yurt v. Colvin*, 758 F.3d 850, 853 n.2 (7th Cir. 2014).

actually affect the patient's functional capacity. *See id.* As a result, the score has limited value in determining whether a patient can engage in substantial gainful activity. *See id.*

The ALJ recognized the limited value of GAF scores, [R. at 18 (citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorders listings."))], and the Seventh Circuit has similarly observed that "nowhere do the Social Security regulations or case law require an ALJ to determine the extent of an individual's disability based entirely on his GAF score." *Denton*, 596 F.3d at 425 (quoting *Wilkins v. Barnhart*, 69 Fed. App'x. 775, 780 (7th Cir. 2003)). Plaintiff may therefore argue that his assigned GAF scores "prove" his disability, but, as the ALJ correctly observed, the law simply does not support this assertion.

Next, Plaintiff notes that this Court has previously stated that an ALJ may not entirely ignore GAF scores. [Dkt. 17 at 12 (citing *Pickett v. Astrue*, No. 1:11-CV-0160-SEB-DML, 2012 WL 4470242, at *6 n.3 (S.D. Ind. Sept. 27, 2012).] This is correct, insofar as an ALJ must consider all evidence in the record and may not ignore an entire line of evidence contrary to his decision. *See, e.g.*, *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *accord, e.g.*, *Stevenson v. Colvin*, No. 1:13-CV-1166-WTL-DKL, 2014 WL 4656816, at *4 (S.D. Ind. Sept. 17, 2014) ("GAF scores are just one piece of evidence an ALJ may consider.").

In this case, however, the ALJ did not ignore Plaintiff's GAF scores. First, she expressly noted that Plaintiff was assigned a GAF score of 49 during his treatment with Meridian Health Services. [R. at 19 ("A GAF score of 49 was noted").] In addition, she discussed multiple appointments at which such GAF scores were assigned. [*See id.* (citing R. at 715-16, 742, 751).] As Plaintiff notes, the ALJ did not cite each specific GAF score that Meridian Health assigned,

[*see id.*], but an ALJ "need not evaluate in writing every piece of testimony and evidence submitted."[5] *Carlson*, 999 F.2d at 181. Here, the ALJ was plainly aware that Plaintiff had received GAF scores indicative of potentially serious symptoms, and Plaintiff's assertion that the ALJ ignored these scores is thus not consistent with the record.

The ALJ then considered the broader record of Plaintiff's mental health impairments. She first noted that Dr. Regina McKinney had performed a consultative examination to assess Plaintiff's mental health. [R. at 18 (citing R. at 292-297).] That doctor assigned a GAF score of 56, indicating merely moderate mental symptoms, [R. at 296], and noted that Plaintiff described himself as only "occasionally" anxious and depressed. [*Id.*] Next, the ALJ considered the opinion of state agency psychological consultant Dr. Ken Lovko. [R. at 22.] Dr. Lovko indicated that, despite his mental difficulties, Plaintiff would be able to carry out semi-skilled tasks, relate on at least a superficial basis to coworkers, and maintain attention for a sufficient period of time to complete tasks. [R. at 301.] Finally, the ALJ considered the remaining records from Meridian Health. [R. at 20-21.] As explained above, however, the ALJ properly concluded that Plaintiff's unwillingness to follow Meridian's treatment recommendations indicated that his mental

---

[5] This observation also dispenses with the argument in Plaintiff's reply brief. [Dkt. 19 at 3-8.] There, Plaintiff contends that the ALJ "ignored" or "selectively considered" various findings in Plaintiff's medical records, but because the ALJ has no obligation to discuss every piece of evidence in the record, it was not erroneous for the ALJ to omit these findings. In addition, the ALJ considered many of the allegedly ignored findings. Plaintiff, for instance, contends that the ALJ ignored multiple diagnoses of major depression, [*id.* at 6-7], but the ALJ specifically noted that Plaintiff had been diagnosed with this impairment, [R. at 19], and even listed "major depressive disorder" as a severe impairment at step two of her analysis. [R. at 14.] Finally, many of the observations Plaintiff cites were from medical records that pre-dated the September 6, 2011 denial of Plaintiff's prior application. [*See, e.g.*, Dkt. 19 at 3, 5.] These records are not *per se* irrelevant to Plaintiff's claim, but such records have relevance only insofar as they "fill gaps in or illuminate evidence of [Plaintiff's] mental impairment and its effect on [his] functioning on and after [September 6, 2011.]" *Young v. Colvin*, No. 1:13-CV-01602-TWP-DM, 2015 WL 1190095, at *5 (S.D. Ind. Mar. 13, 2015) (citing *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)). The ALJ extensively discussed Plaintiff's mental impairments, and Plaintiff's narrative discussion of the pre-denial records offers no analysis of any alleged "gaps" in the ALJ's reasoning. The Court thus sees no error in the ALJ's decision to not specifically cite portions of these records.

impairments were not as severe as alleged, such that Plaintiff would be able to function notwithstanding the low GAF scores. [*See id.*]

From this discussion, the Court finds it clear that the ALJ appropriately treated Plaintiff's GAF scores as "one piece of evidence" to evaluate in her consideration of the record as a whole. *Stevenson*, 2014 WL 4656816, at *4. In addition, the Court can easily "trace the ALJ's path of reasoning" from the evidence to her conclusion. *Clifford*, 227 F.3d at 874. Plaintiff's GAF scores of 49 may have indicated that, on certain days, Plaintiff had potentially serious symptoms, but the other evidence in the record nonetheless indicated that Plaintiff's mental limitations were not, on the whole, disabling. The job of this Court is not to reweigh the evidence, *see Overman*, 546 F.3d at 462, and so the Court will not disturb the ALJ's conclusion on this issue.

### c. GAF Score of 35

Plaintiff finally cites a GAF score of 35 that was assigned to Plaintiff on June 7, 2013. [Dkt. 17 at 7.] Again, Plaintiff's reliance on this score is misplaced. GAF scores are not dispositive of disability, and so citing this score does little to advance Plaintiff's case. Plaintiff's argument would carry more weight if the ALJ had ignored all of Plaintiff's GAF scores, but, as described above, the ALJ did not; the addition of another GAF score to Plaintiff's previous argument is thus no basis to remand the case. *See Denton*, 596 F.3d at 425; *accord, e.g.*, *Bates v. Colvin*, 736 F.3d 1093, 1099 n.3 (7th Cir. 2013) ("[A] low GAF score alone is insufficient to overturn an ALJ's finding of no disability.").

Plaintiff's argument regarding this score is also flawed on a more fundamental level: Plaintiff claims that the ALJ "ignored" the GAF score of 35, [Dkt. 17 at 12], but this score was assigned more than a week **after** the ALJ's decision. [*See* R. at 843.] It thus would have been

12

impossible for the ALJ to consider the score, and the ALJ obviously did not err by failing to include it in her decision.

Moreover, this Court **cannot** reverse the ALJ's decision on the basis of the score. Where, as here, the Appeals Council denies review an ALJ's adverse decision and the claimant then seeks judicial review, "the decision reviewed in the courts is the decision of the administrative law judge." *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). "The correctness of that decision depends on the evidence that was before him," and not on evidence that was submitted to the Appeals Council but that did not warrant reversal of the ALJ's decision. *Id.* The Court therefore cannot consider the GAF score of 35, and the Court cannot remand the case on the basis of that score. *See id.*; *see also, e.g.*, *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) ("[Claimant's] company medical records submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error."); *Bryant v. Colvin*, No. 3:12-CV-0307-CAN, 2013 WL 6800127, at *8 (N.D. Ind. Dec. 20, 2013) ("If the Appeals Council denied review, the reviewing court must ignore the evidence submitted to the Appeals Council and review the ALJ's decision and only the evidence that was before the ALJ."). If Plaintiff wanted the Court to consider evidence that was not before the ALJ, then Plaintiff should have argued that remand was appropriate under sentence six of 28 U.S.C. § 405(g). *See Luna*, 22 F.3d at 692 n.5. Plaintiff did not do so, and has therefore waived that argument, and the Court will not remand the ALJ's decision on the basis of evidence that was not before the ALJ.

2. **Need for a Medical Advisor**

Plaintiff argues that the ALJ should have summoned a medical advisor to obtain an updated opinion on whether Plaintiff's mental impairments met or medically equaled a listed

impairment. [Dkt. 17 at 15; Dkt. 19 at 9.] Whether a listing is met or equaled is a legal question reserved to the Commissioner, but "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p. This requirement is satisfied when the record contains a signed Disability Determination and Transmittal Form. *Id.*; *see also Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004) (quotation marks and alteration omitted) ("These forms conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.").

The record in this case contains such forms, [R. at 69-72], and the ALJ was thus entitled to rely on these forms to ensure that a medical source had assessed the issue of equivalence. *See Scheck*, 357 F.3d at 700. Plaintiff notes that the ALJ did not explicitly cite these forms in her opinion, but as Judge Magnus-Stinson recently explained, direct citation of the forms is not necessary:

> [E]xplicit reliance on these forms is unnecessary, as "[a]n ALJ is entitled to evaluate the evidence and explanations that support a medical source's findings." This is precisely what the ALJ did here; she reviewed the underlying medical records, contrasted them with Mr. Schnittker's subjective complaints, and concluded that the evidence did not demonstrate that the Paragraph B criteria were met. This is sufficient for the ALJ to comply with her duty to consult an expert's opinion on medical equivalence.

*Schnittker v. Colvin*, No. 1:12-CV-01694-JMS-MJD, 2013 WL 5487866, at *4 (S.D. Ind. Sept. 27, 2013) (citing *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009)). The facts of this case are analogous. The Disability Determination and Transmittal Forms in the record relied on the above-described assessment from Dr. Lovko, [R. at 69-70], and the ALJ gave Dr. Lovko's

14

opinion "great weight" in her assessment of the overall evidence of record. [R. at 23.] The ALJ also repeatedly cited Dr. Lovko's assessment during her step three analysis. [R. at 15.] Thus, just as in *Schnittker*, the ALJ in this case reviewed the underlying medical records and concluded that they did not support a finding that Plaintiff's impairments met or medically equaled a listing. The ALJ therefore discharged her duty to ensure that a medical opinion on equivalence was evaluated and given appropriate weight. *See Schnittker*, 2013 WL 5487866, at *4.

Plaintiff then argues that the ALJ should not have relied on the medical opinions of record because later-submitted evidence would have changed those opinions. [Dkt. 17 at 15.] SSR 96-6p addresses this issue and provides that an ALJ must obtain an updated medical opinion from a medical expert 1) "When no additional medical evidence is received, but in the opinion of the [ALJ] the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable;" or 2) "When additional medical evidence is received that in the opinion of the [ALJ] may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." SSR 96-6p.

Plaintiff in this case argues that the latter half of the Ruling applies, [Dkt. 17 at 15], but the only evidence that Plaintiff cites as a basis for seeking an updated medical opinion is the GAF score assigned in June 2013. [Dkt. 17 at 15.] As explained above, this Court cannot properly consider this score because it was not before the ALJ at the time of her decision. In addition, it is Plaintiff's burden at step three of the sequential evaluation process to establish that his impairments rendered him disabled. *See, e.g.*, *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) ("[T]he burden of proof at step 3 rests with the claimant[.]"). By failing to cite any

15

other evidence that would have required an updated medical opinion, Plaintiff has failed to carry his burden on this argument.

Finally, Ruling 96-6p indicates that the ALJ has significant discretion in deciding whether to summon a medical expert. *See* SSR 96-6p (update required only when necessary "in the opinion of the [ALJ]"); *see also, e.g.*, *L.B.M. ex rel. Motley v. Astrue*, No. 1:08-CV-1354-WTL-DML, 2010 WL 1190326, at *16 (S.D. Ind. Mar. 23, 2010) ("[T]he ALJ had discretion to determine whether the additional evidence might have changed the state-agency experts' equivalence opinions[.]"). In this case, the ALJ properly exercised that discretion: she specifically explained that the record contained no "conflict, ambiguity, or insufficiency" that needed to be resolved, such that the record was "in posture for a full and fair determination." [R. at 11.] She thus decided that an additional medical opinion would be superfluous, [*id.*], and in the absence of any evidence to the contrary, the Court will not disturb that conclusion.

### 3. The ALJ's Step Five Determination

Plaintiff's final argument reads in its entirety:

> The ALJ's hypothetical questions to the vocational expert impermissibly failed to account for the quite severe functional limitations due to his mental impairments. The ALJ's residual functional capacity assessment (R. 15) omitted almost all of the limitations due to his quite severe anxiety and depression.
> Remand is required where an ALJ fails to give full consideration to all of a claimant's documented impairments in determining that he is not disabled, *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Young v. Barnhart*, 362 F.3d 995, 1003-1004 (7th Cir. 2004); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-619 (7th Cir. 2010); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012).

[Dkt. 17 at 19.] By failing to develop this argument, Plaintiff has waived it. *See, e.g.*, *Haggard v. Colvin*, No. 1:12-CV-1263-SEB-TAB, 2013 WL 6388365, at *2 (S.D. Ind. Dec. 5, 2013) (quoting *United States v. Elst*, 579 F.3d 740, 743 (7th Cir.2009) ("Perfunctory and undeveloped arguments . . . are waived."). Indeed, several judges of

16

this Court have previously warned Plaintiff's counsel, Mr. Mulvany, that his failure to develop his arguments risks waiver. *See S.N.B. ex rel. Jordan v. Astrue*, No. 1:11-CV-1519-TAB-RLY, 2013 WL 936552, at *2 (S.D. Ind. Mar. 11, 2013) (collecting cases and concluding "[w]aiver is therefore appropriate"). As a result, this "argument"—such as it is—does not support reversal of the Commissioners' decision.[6]

Moreover, even if the Court considered Plaintiff's contention, the Court would not reverse the Commissioner's decision. The ALJ—as described above—extensively analyzed the evidence of Plaintiff's mental impairments. [*See, e.g.*, R. at 18 (describing Dr. McKinney's mental consultative examination); R. at 19 (considering Mr. Hogg's mental health treatment notes); R. at 20 (describing Meridian Health Services records); R. at 22-23 (discussing Dr. Lovko's assessment).] The ALJ then incorporated in Plaintiff's RFC those mental limitations that were supported by this review of the evidence. [R. at 15 (limiting Plaintiff to two-hour segments of work and superficial contact with coworkers).] The ALJ therefore did not "omit[]" Plaintiff's limitations, and there is accordingly no need to remand the case for further consideration of this issue.

## Conclusion

For the foregoing reasons, the Court finds that substantial evidence supports the ALJ's decision that Dion Sparks is not entitled to Disability Insurance Benefits or Supplemental

---

[6] Plaintiff attempts to develop his argument in his reply brief, but arguments raised for the first time in reply are themselves waived. *See, e.g.*, *Green v. Colvin*, No. 1:12-CV-00094-JEM, 2013 WL 4647222, at *9 (N.D. Ind. Aug. 28, 2013) (citing *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir.2004)) ("Plaintiff has waived the argument by raising it for the first time in her reply brief[.]"). In addition, Plaintiff's newly developed argument is unsound: Plaintiff claims that the ALJ impermissibly tried to account for Plaintiff's mental limitations solely by limiting him to "simple" or "unskilled" work. [Dkt. 19 at 11 (citing *Yost v. Astrue*, No. 11 C 1423, 2012 WL 2814373, at *20 (N.D. Ill. July 10, 2012)).] The ALJ, however, did not do so; rather, the ALJ specifically addressed Plaintiff's social limitations by limiting him to superficial contact with others, [R. at 15], and the ALJ specifically addressed Plaintiff's limitations in concentration, persistence, or pace by limiting him to two hours of work at a time. [*Id.*] Plaintiff's argument thus ignores the limitations that the ALJ actually imposed, and his argument is unavailing.

Security Income. The Magistrate Judge therefore recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 05/18/2015

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov